1

2

3

4

5

6

7                          IN THE UNITED STATES DISTRICT COURT

8                         FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10   DWAYNE EICHLER,

11              Petitioner,                    No. CIV S-07-0516 GEB DAD P
          vs.
12
     J. SUBIA, et. al,
13
                Respondents.                   FINDINGS AND RECOMMENDATIONS
14
     _____/
15

16          Petitioner, a state prisoner proceeding pro se, has filed a petition for writ of habeas

17   corpus pursuant to 28 U.S.C. § 2254.  On March 6, 2009, respondents filed the pending motion

18   to dismiss, arguing that the petition is time-barred under the Antiterrorism and Effective Death

19   Penalty Act of 1996 ("AEDPA").[1]  Petitioner has filed an opposition to the motion.  For the

20   reasons set forth below the court will recommend that respondent's motion to dismiss be granted.

21                                       **BACKGROUND**

22          Petitioner was convicted in the Yuba County Superior Court of attempting to

23   evade a peace officer while driving recklessly.  (Respondents' Lodg. Doc. 1.)  Petitioner admitted

24
     _____
25          [1] Respondents argue that the petition should also be dismissed because it contains an
     unexhausted claim.  (Resp's Mot. to Dism. at 12-14.)  Petitioner concedes that one his habeas
26   claims in the pending federal petition is unexhausted, but states that if that claim "doesn't stand a
     chance" he will withdraw it.  (Pet. at 5.)  Because the court is recommending that the petition be
     dismissed as time-barred, this exhaustion issue need not be reached.

1  to  having five prior felony convictions within the meaning of California's Three Strikes law as

2  well as having served two prior prison terms.  (Respondents' Lodg. Doc. 2.)  Petitioner was

3  sentenced to state prison for a term of 25 years to life, with two consecutive one-year

4  enhancement terms imposed.  (Respondents' Lodg. Doc. 1.)

5          On May 29, 1997, the California Court of Appeal for the Third Appellate District,

6  affirmed the judgment of conviction, but vacated petitioner's sentence and remanded the matter

7  to allow the trial court to exercise its discretion in determining whether to strike one or more of

8  petitioner's prior felony convictions.  Id.  On remand, the trial court declined to strike any of

9  petitioner's priors and reinstated the sentence originally imposed.   (Respondents' Lodg. Doc. 3

10  at 2.) On January 22, 1999, the California Court of Appeal for the Third Appellate District,

11  modified the judgment of conviction to award petitioner presentence custody credits but

12  otherwise affirmed the judgment.  (Respondents' Lodg. Doc. 3.)  Petitioner filed a petition for

13  review in the California Supreme Court, which was summarily denied on April 14, 1999.

14  (Respondents' Lodg. Doc. 4-5.)

15          Petitioner subsequently filed four state habeas petitions.  The first was filed on

16  January 3, 2000, in the Yuba County Superior Court, and was denied on February 2, 2000.

17  (Respondents' Lodg. Doc. 8, 9.)  The second was filed over four and a half years later, on

18  October 29, 2004, in the Yuba County Superior Court and was denied on December 6, 2004.

19  (Respondents' Lodg. Doc. 10, 11.)  The third petition was filed on March 10, 2006, in the

20  California Court of Appeal for the Third Appellate District, and was summarily denied on April

21  6, 2006.  (Respondents' Lodg. Doc. 12, 13.)  The fourth petition was filed in the California

22  Supreme Court on June 1, 2006, and was summarily denied on February 7, 2007.  (Respondents'

23  Lodg. Doc. 14, 15.)  The instant petition was filed on March 14, 2007.

24                    **RESPONDENTS' MOTION TO DISMISS**

25          In moving to dismiss respondents argue that the instant petition is time-barred.

26  Specifically, respondents contend that the one-year statute of limitations for the filing of a federal

1  habeas petition in this case began to run when petitioner's time for seeking review of his

2  conviction in the United States Supreme Court expired, ninety days after his petition for review

3  in the California Supreme Court was denied.  Respondents concede that proper filing of a state

4  habeas petition tolls the applicable one-year statute of limitations period, but argue that even

5  taking into account tolling stemming from petitioner's first state habeas petition, the statute of

6  limitations for filing a federal petition expired on August 12, 2000.  (Respondents' Mot. to Dism.

7  at 4-5.)  Respondents contend that petitioner's subsequent filings of additional habeas petitions in

8  state court did not act to revive the already expired statute of limitations.  (Id.)

9          Respondents also argue that petitioner is not entitled to equitable tolling of the

10  statute of limitations on the basis of his lack of knowledge of the legal system, mental illness,

11  physical illness, numerous transfers, Administrative Segregation and Security Housing Unit

12  placements, lockdowns and limited access to the law library, loss of legal documents at three

13  institutions, or because he was pursuing other criminal and civil cases.  Specifically, respondents

14  assert that petitioner is not entitled to equitable tolling on the basis of mental disability because

15  his mental illness was "not so grave so as to forgive his lack of diligence in pursuing his rights."

16  In this regard, respondents note that petitioner filed a state habeas petition while the statute of

17  limitations was running, that medical records reflect that petitioner's mental condition improved

18  over time to the extent that he requested that he be removed from the mental health population at

19  his institution of confinement, and that petitioner works in digital mapping, "the only 'high tech'

20  computer job" within the California prison system.  Respondents also argue that petitioner's

21  claim of entitlement to equitable tolling of the statute of limitations on the basis of his physical

22  illness, housing assignments and transfers, and lost legal documents fails due to a  lack of

23  specificity, and that petitioner's claim that he was busy preparing other criminal and civil appeals

24  actually undercuts his equitable tolling argument because it establishes his ability to engage in

25  litigation on his own behalf during the relevant time.  (Id. at 6-10.)

26  /////

1    Respondents also contend that the court should not reach the merits of petitioner's

2    time-barred claims under the "fundamental miscarriage of justice" doctrine announced in <u>Schlup</u>

3    <u>v. Delo</u>, 513 U.S. 298 (1995) because petitioner has not established his actual innocence.  (<u>Id.</u> at

4    11-12.)

5                                   **PETITIONER'S OPPOSITION**

6          Petitioner's opposition to the pending motion to dismiss consists of thirty-five

7    rambling, single-spaced pages.  For example, petitioner writes that he is "a well known and

8    respected paranormal, who was born with some psychic abilities that are substantiated in several

9    books. . . these are looked at by most as ludicris [sic] and as mental health issues, and at times are

10   exhitited [sic] as such, and interfere with normal functioning as such."  (<u>Id.</u> at 6-7.)  Petitioner

11   also states that he and his siblings were kidnaped by his stepfather, who "became known to be

12   engaged in pedophilia."  (<u>Id.</u> at 5.)  Petitioner writes that when "he started to look closer, and

13   deeper at the pedophilia thing, and soon found offices and computors [sic]–and in fact

14   organizations of them that later turned out to be highly connected to known drug rings and

15   through the years to have doctors, lawyers, and judges to be involved as well as many other

16   professional types. [Petitioner] became dangerous to them when he attacked and smashed their

17   computors [sic] and offices as he could."  (<u>Id.</u>)

18        Petitioner claims that in 1994 he met Donald Wahlberg, "a disbarred judge turned

19   attorney who was unknown to [petitioner] involved in drug rings and pedophile rings."  (<u>Id.</u>)

20   Petitioner states that when arrested for reckless driving, Wahlberg "showed up to be his lawyer

21   and [petitioner] was completely in shock, and especially as Wahlberg looked just like a creepy

22   childmolestor [sic] would look."  (<u>Id.</u> at 8.)  Petitioner contends that while his attorney at trial

23   was named Woods, Wahlberg gave Woods advice, telling him not to listen to petitioner.  (<u>Id.</u>)

24        Petitioner writes that "he is not a weirdo or a nut, but does have some hard to

25   explain stuff going on at times."  (<u>Id.</u> at 13.)  He explains that,

26   /////

1
2
3
4
5
6

> he had some very complicated mental health issues with a varied
> diagnosis of depression, catatonia, paranoid schizophrenia,
> pyschotic, delusional, auditory and visual hallucinations, obsessive
> compulsive disorder, psychosis, antisocial personality disorder and
> organic brain syndrome.  During the time period [of] 1989 - 6-3-05
> he could not always function well and sometimes not at all.  This
> greatly contributed to him not being able to put forth this habeas
> petition any sooner than it was.  Deep catatonia like depression, the
> O.C.D. and auditory and visual visions/hallucinations made it
> impossible to function for almost the complete period.  If I could
> read or write it was from rare, and then eventually, better . . . .

7   (Id. at 21-22.)

8          Petitioner claims that during the years 2000 to 2003, he had no law library access

9   at his place of confinement for long periods of time.  (Id. at 24.)  He states that during this time

10  he went to the law library at every possible opportunity, but was "experiencing aforementioned

11  mental health issues, in which I would be trying to read a book, or write, but outsidde [sic]

12  auditory or visual hallucinations would occur, and at these times I would have to read the same

13  sentence over and over until after taking an hour trying to struggle through hearing and seeing

14  things while trying to read, I would just have to stop, and retention or real understanding of what

15  I had just read was minimal, if at all."  (Id. at 22.)  Petitioner claims that his psychotropic

16  medications were "very debilitating and prevented him from accomplishing."  (Id. at 26.)

17         Petitioner writes that "the first five, of the ten years since sentencing, have been

18  spent mostly in transfers from one ad-seg unit, or S.H.U., to another, and along with the many

19  transfers, petitioner has spent some time in the mental health programs, and has also had his legal

20  documents thrown away at various times by CDC officers."  (Id. at 18.)  He claims that from

21  2000 through 2003, "only about 6 months to one year were not on a lock down."  (Id.)

22         Petitioner also claims to have suffered from a number of physical illnesses,

23  including untreated gingivitis and periodontal disease such that he lost six teeth from 2000-2003,

24  migraine headaches from 2001 to 2007, a hernia surgery in 2001-02, osteoma in 2002, and

25  diverticulosis so severe that he was "flat on his back and unable to do anything, and close to

26  death" on at least three month-long occasions in 2002.  (Id. at 22-23, 25.)  Petitioner represents

1  that in 2003 his face was slashed from lip to ear by another inmate.  (Id. at 22.)  He alleges that

2  he suffered from abdominal pain that was diagnosed as "liver cysts, barrets disease, ulcerated

3  colitis, gastritis, and through the previous years had gone untreated as I.B.S."  (Id. at 24.)

4          Petitioner also asserts that, due to his lack of understanding of the law, he was

5  unaware that his federal habeas petition might be time-barred.  (Id. at 26.)  He admits that he was

6  able to function well enough in 2004 to "put forth . . . Eichler v. Sherbin et al. . . . and this habeas

7  petition on 10-29-04."  (Id. at 26.)[2]  Finally, petitioner argues that even if his request for federal

8  habeas relief is time-barred, the court should nonetheless reach the merits of his petition because

9  a letter from the passenger in the vehicle with him at the time of his arrest establishes that he is

10  actually innocent of the crimes for which he was convicted.  (Id. at 31.)

11                                         **ANALYSIS**

12  I.        The AEDPA Statute of Limitations

13          On April 24, 1996, Congress enacted AEDPA which amended 28 U.S.C. § 2244

14  by adding the following provision:

15          (d)(1) A 1-year period of limitation shall apply to an application
        for a writ of habeas corpus by a person in custody pursuant to the
16        judgment of a State court. The limitation period shall run from the
        latest of –
17
18              (A) the date on which the judgment became final by the
        conclusion of direct review or the expiration of the time for
19        seeking such review;

20              (B) the date on which the impediment to filing an
        application created by State action in violation of the Constitution
21        or laws of the United States is removed, if the applicant was
        prevented from filing by such State action;
22
23              (C) the date on which the constitutional right asserted was
        initially recognized by the Supreme Court, if the right has been
24        newly recognized by the Supreme Court and made retroactively
        applicable to cases on collateral review; or

25  ─────────────────

26      [2]  By "this habeas petition" petitioner appears to be referring to a habeas petition that he
filed in the Yuba County Superior Court on the date referred to.

1

2

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

3

4

5

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

6

The one-year AEDPA statute of limitations applies to all federal habeas corpus petitions filed

7

after the statute was enacted and therefore applies to the pending petition. See Lindh v. Murphy,

8

521 U.S. 320, 322-23 (1997).

9

As noted, on June 28, 1995, petitioner was convicted of attempting to evade a

10

peace officer while driving recklessly, and was sentenced to 25 years to life in prison, with two

11

consecutive one-year sentencing enhancements.  The California Court of Appeal vacated that

12

sentence and remanded the matter to the trial court, the trial court reinstated the sentence, and the

13

California Court of Appeal modified the judgment to award petitioner presentence custody

14

credits but otherwise affirmed the judgment of conviction.  Petitioner filed a petition for review

15

in the California Supreme Court, which was summarily denied on April 14, 1999.

16

For the purposes of federal habeas review, petitioner's conviction therefore

17

became final on July 13, 1999, after the 90-day period for the filing of a petition for a writ of

18

certiorari with the United States Supreme Court had expired.  See Bowen v. Roe, 188 F.3d 1157,

19

1159 (9th Cir. 1999).  Accordingly, in this case the AEDPA's one-year statute of limitations

20

began to run on the following day, July 14, 1999, and expired on July 14, 2000.  See Patterson v.

21

Stewart, 251 F.3d 1243, 1245-47 (9th Cir. 2001).  The instant federal habeas petition was not

22

filed until March 14, 2007.  Accordingly, petitioner's federal petition for writ of habeas corpus is

23

untimely unless he is entitled to the benefit of lengthy statutory or equitable tolling.

24

II.      Statutory Tolling

25

"The time during which a properly filed application for State post-conviction or

26

other collateral review with respect to the pertinent judgment or claim is pending shall not be

counted" toward the AEDPA statute of limitations.  28 U.S.C. § 2244(d)(2).  The AEDPA statute of limitations, however, is not tolled during the interval between the date on which a judgment becomes final and the date on which the petitioner files his first state collateral challenge because there is no case "pending."  Nino v. Galaza, 183 F.3d 1003, 1006 (9th Cir. 1999).  Once a petitioner commences state collateral proceedings, a state habeas petition is "pending" during a full round of review in the state courts, including the time between a lower court decision and the filing of a new petition in a higher court, as long as the intervals between the filing of those petitions are "reasonable."  Carey v. Saffold, 536 U.S. 214, 222-24 (2002).

In this case, petitioner filed a habeas petition in the Yuba County Superior Court on January 3, 2000, which was denied on February 2, 2000.[3]  Petitioner is therefore entitled to statutory tolling for the thirty days that this petition was pending before the Superior Court.  With the benefit of thirty days tolling, the statute of limitations for the filing of a federal habeas petition would have expired on August 13, 2000.

Petitioner's next state habeas petition, however, was not filed in the Yuba County Superior Court until October 29, 2004, over four years after the statute of limitations for the filing of a federal petition had expired.  Once a statute of limitations has expired, subsequent filings cannot revive it.  See Jiminez v. Rice, 276 F.3d 478, 482 (9th Cir. 2001).  The instant petition is therefore time-barred unless petitioner can demonstrate that he is entitled to over six and a half years (from August 13, 2000 to March 14, 2007) of equitable tolling.

III.    Equitable Tolling

The United States Supreme Court has held that "a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way."  Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005).  See also Lawrence v. Florida, 549 U.S. 327, 328 (2007) (assuming

---

[3]  Respondents do not contend that this state habeas petition was improperly filed.

1    without deciding that equitable tolling applies to § 2244(d)).  The Ninth Circuit has stated that

2    "the purpose of equitable tolling 'is to soften the harsh impact of technical rules which might

3    otherwise prevent a good faith litigant from having a day in court." Harris v. Carter, 515 F.3d

4    1051, 1055 (9th Cir. 2008).  Nonetheless, equitable tolling of the AEDPA statute of limitations

5    will be unavailable in most cases.  See Corjasso v. Ayers, 278 F.3d 874, 877 (9th Cir. 2002);

6    Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999).  Moreover, a habeas petitioner seeking

7    equitable tolling must show that the extraordinary circumstances alleged were the "but for" and

8    proximate cause of the untimely filing of his federal habeas petition.  Bryant v. Ariz. Atty. Gen.,

9    499 F.3d 1056, 1061 (9th Cir. 2007); Allen v. Lewis, 255 F.3d 798, 800-01 (9th Cir. 2001).

10            Here, petitioner has not demonstrated that extraordinary circumstances were the

11   "but for" cause of his failure to file his federal petition during the entire period between August

12   13, 2000, the day that the statute of limitations expired, and March 14, 2007, the day that he filed

13   his federal habeas petition in this court.  As noted above, petitioner attempts to give several

14   justifications for the application of equitable tolling in his case, including: mental illness,

15   physical illnesses, transfers, institutional lockdowns, lost legal files, ignorance of and

16   inexperience with the law, and his preoccupation with other litigation he was pursuing.[4]  The

17   court will address each of those purported basis for equitable tolling.

18            A.    Mental Illness

19            Petitioner's mental health records show that during his incarceration he has been

20   diagnosed as suffering from paranoid schizophrenia, polysubstance dependence (in remission),

21   obsessive compulsive disorder, organic brain syndrome, and antisocial personality disorder.  He

22   was admitted to Atascadero State Hospital in 1999 and was discharged to the California Medical

23   Facility in 2000.  Prison records also suggest that at times during his incarceration it has been

24   suspected that petitioner has been feigning or exaggerating his symptoms.  According to those

25   _____

26       [4] Petitioner has also submitted a number of records for the court's review in support of
     his argument that he is entitled to a lengthy period of equitable tolling.

same records, petitioner's mental health has improved over time and, in 2005, he requested that

he be removed from the mental health treatment population.  (Pet., Ex. F; Pet'r's Opp'n to

Respondents' Mot. to Dism., Attachment.)

        Petitioner's prison mental health records for the time period petitioner seeks to

have equitably tolled reflect the following.  In May of 2000 it was noted that petitioner had

"significant OCD as a barrier to learning.  For example, he stated that he could not read a book

because he would have to go back and re-read the book again and again."  In August of 2000 the

records reflect that petitioner had indicated that taking Zoloft had reduced the frequency of his

ritualistic behaviors, such as banging on the wall and flushing the toilet, from twenty to thirty

times a day to five or six.  Another record from that same month states that petitioner "may be

feigning psychotic symptoms for secondary gain."  An assessment the following month reported

that petitioner's bizarre rituals, which he engaged in for several hours each day, irritated his

cellmate.  Petitioner was reported to have stated, "I have been working with the heavens for

many years on and off, but the last two years it has been almost from the time I get up to the time

that I go to sleep."  Petitioner's mental health records also stated that he "reported that he can't

read because he hears voices telling him to turn back to previously read material, typical of

OCD."  However, a November 2000 entry reflected that "[t]here is a marked discrepancy

between the severity of [petitioner's] self-reported symptoms and his observed high level of

functioning."  Another notation in the record from the same month stated that petitioner "may be

exaggerating symptoms."  At that time, petitioner reported that he still engaged in his rituals five

or six times a day, and that "he hears voices every day, all day, only time he doesn't hear them is

when he is talking or asleep."

        In February 2001, a record entry documented petitioner's continued obsessive

compulsive symptoms, including ritualistic behavior, because he "hears voices that tell him bad

things will happen if he doesn't do it."  A December 2001 entry states that petitioner was

suffering from auditory hallucinations that interfered with his interpersonal relations, since he

would respond to the voices out loud.

In June 2002 the records reflect that petitioner was still taking Zoloft for his OCD, the symptoms of which were hitting the wall, washing his hands and flushing the toilet all day long.  Petitioner also complained of auditory hallucinations and of "not feeling well."  His insight and judgment were reported to be "poor/ fair."  Another record entry the same month reported that petitioner was experiencing bad headaches and "sees people and things in horrible situations" but that his thought processes were "logical, coherent and goal-directed."

In January of 2003 it was reported that petitioner was taking medications and was then currently in remission.  Records from April of 2003 reported that petitioner still suffered from auditory hallucinations although his OCD had improved, and that he "goes on about the fact that he was poisoned, this has made his hair start to fall out, his teeth rot away."  In June of 2003, according to his mental health records, petitioner asked to be taken off of Paxil, stating that it was not necessary for him to take medication as he had learned coping skills.  Records from September of 2003 indicate that petitioner continued to have auditory hallucinations, and claimed to have ESP.  In December 2003 petitioner told his doctor that his stepfather was a child molester who was part of an organized crime organization.

In January of 2004 petitioner was reported to be "delusional but stable."  At that time petitioner claimed to have knowledge of past "mob" crimes that he had reported to the federal government and spoke about astral projection and his own clairvoyance.  A record entry in April of 2004 states that petitioner "reports he's doing well . . . mood upbeat, affect full-range . . . thought process clean."

Finally, petitioner's prison mental health records reflect that he asked to be removed from the institutional mental health program in February 2005, stating that he had been "med free and symptom free for several years."  A record entry in March of 2005 notes that petitioner's "delusional thought process that has not disrupted his ability to program."  Neither party has submitted to the court any mental health records relating to petitioner after 2005.

1     Mental illness can certainly represent an extraordinary circumstance justifying

2  equitable tolling of the AEDPA statute of limitations.  See Laws v. Lamarque, 351 F.3d 919, 923

3  (9th Cir. 2003); Calderon v. United States District Court (Kelly), 163 F.3d 530, 541 (9th Cir.

4  1998) (en banc) ([A] "putative habeas petitioner's mental incompetency [is] a condition that is,

5  obviously, an extraordinary circumstance beyond the prisoner's control," and thus "mental

6  incompetency justifies equitable tolling.").  However, not every mental illness automatically tolls

7  the statute of limitations.

8     In opposing respondents' pending motion to dismiss, petitioner argues that until

9  June of 2005 his mental illness prevented him from filing his habeas petition with this court.  He

10  states that until that time he could rarely read or write, and would read the same sentence

11  repeatedly without comprehension.  In addition, petitioner claims that the psychiatric medications

12  he was taking before that time  were "very debilitating."  There is some support of petitioner's

13  claims in his medical records before this court.  This is particularly true with respect to the

14  beginning of the time period in question.  In this regard, petitioner's records reflect that he

15  reported being unable to read due to voices in his head telling him to reread the same sentence

16  repeatedly.  In addition, the frequency of petitioner's obsessive-compulsive ritualistic behaviors,

17  which are amply documented in his prison mental health records, may have prevented him at

18  times from maintaining the ability to concentrate that would be required for reading and writing.

19     However, the severity of petitioner's mental illness appears to have significantly

20  lessened towards the end of the period of time in question.  Most importantly, by February of

21  2005, petitioner requested to be removed from the mental health population, stating that he had

22  been "symptom free for several years."  Of course, a mentally ill person may not acknowledge

23  their own mental illness.[5]

24

25     [5] The rambling nature and improbable assertions in petitioner's pleadings suggest that
petitioner remains somewhat delusional to this day, despite his claim that he is not "paranoid
26  schizophrenic at this time" but merely a "well known . . . paranormal."

1    However, regardless of petitioner's own statements about his lack of symptoms

2    for several years prior to February of 2005, there is reliable evidence before the court indicating

3    that despite his mental condition, petitioner was capable of engaging in litigation during

4    substantial parts of the period for which he now seeks equitable tolling.  Specifically, the record

5    established that petitioner filed a state habeas petition and a civil lawsuit in 2004, and another

6    civil lawsuit in 2006.  (See Respondents' Lodg. Doc. 8, 10, 19.)  Petitioner not only filed these

7    civil lawsuits, but continued to participate in litigation during the time in question by filing

8    documents as was appropriate in those actions.  (See, e.g., Respondents' Lodg. Doc. 19)

9    (reflecting that petitioner filed various documents and pleadings on a regular basis from June

10   2004 to the present in his civil lawsuits).  Petitioner's filings in other civil actions persuasively

11   belie his current claim that his mental illness was the "but for" cause of his failure to file his

12   application for federal habeas relief during the time between 2004 and March 14, 2007.[6]  See

13   Gaston v. Palmer, 417 F.3d 1030, 1034-35 (9th Cir. 2005) (no clear error in finding that

14   petitioner was not entitled to equitable tolling based on physical and mental disabilities since he

15   prepared and filed a state habeas petition while suffering from the same alleged disabilities); see

16   also, e.g., Morgan v. Mitchell, No. C 07-6477 CRB (PR), 2008 WL 5234253 at *4 (N.D. Cal.

17   Dec. 15, 2008) (rejecting claim for equitable tolling based on alleged mental illness because

18   petitioner was able to file a state habeas petition and several other state petitions and motions

19   during the running of the limitations period); Terry v. Wong, Civil No. 06cv1669 BTM (BML),

20   2007 WL 2601434 at *11 (S.D. Cal. Sept. 6, 2007) (rejecting claim for equitable tolling based on

21   mental illness because petitioner was able to file a state habeas petition thirty-two days into the

22   AEDPA limitations period and to monitor the status of his filing by sending correspondence to

23

---

24            [6] As noted previously, petitioner also filed a state habeas petition in 2000, while the
        AEDPA statute of limitations was running.  Petitioner's ability to file that first state habeas
25      petition also undercuts his equitable tolling argument.  Nonetheless, because it is possible that his
        mental health worsened after he filed his first state habeas petition, the court declines to
26      categorically find that this filing alone precludes equitable tolling on the basis of mental illness.

1  his appellate counsel and seeking assistance from his "jailhouse lawyer" after months had passed

2  without a court ruling).[7]

3         Given this record, petitioner is not entitled to equitable tolling of the AEDPA

4  statute of limitations on the basis of his alleged mental illness past June 9, 2004, the date upon

5  which he filed his first civil lawsuit.[8]

6         B.     Other Justifications for Equitable Tolling

7         As noted above, petitioner also asserts that his lack of legal knowledge, physical

8  illness, numerous transfers, Administrative Segregation and Security Housing Unit placements,

9  prison lockdowns and limited access to the law library, loss of legal documents, and

10  preoccupation with other criminal and civil cases warrant equitable tolling of the AEDPA statute

11  of limitations in this case. Petitioner has not demonstrated that any of these impediments, or any

12  combination of them, were the "but for" cause of his failure to file the instant federal habeas

13  petition after June of 2004.

14         First, ignorance or lack of knowledge of the legal system is not an extraordinary

15  circumstance that would warrant equitable tolling in any event. See Raspberry v. Garcia, 448

16

17      [7] The court is mindful that there are circumstances where a claim of entitlement to equitable tolling based on the mental condition of the petitioner requires development of the

18  factual record. See Laws v. Lamarque, 351 F.3d 919, 924 (9th Cir. 2003). However, in this case the court has before it petitioner's prison mental health records for the entire period of time at

19  issue including those reflecting that in February of 2005, he stated to prison officials that he had been "symptom free for several years" and requested to be removed from the mental health

20  population. Given this sufficiently developed record, no evidentiary hearing is warranted. See Williams v. Woodford, 384 F.3d 567, 591 (9th Cir. 2004) (no evidentiary hearing is warranted

21  where "the documentary evidence submitted fully presented the relevant facts [petitioner's] claim" and where an evidentiary hearing "would not offer any reasonable chance of altering [the

22  district court's] view of the facts.")

23      [8] It might be argued that because it would be futile to file a federal habeas petition without first exhausting state remedies, the AEDPA statute of limitations should also be tolled

24  for the period of time that petitioner's state habeas petitions were pending after June 9, 2004. Without suggesting the validity of such an argument, the court notes that there was over a one-

25  year gap between the Yuba County Superior Court's denial of petitioner's second state habeas petition and the filing of his next petition in the California Court of Appeal, during which his

26  state petition could not be considered to be "pending." Therefore, the instant federal habeas petition would still be time-barred.

1   F.3d 1150, 1154 (9th Cir. 2006) ("a pro se petitioner's lack of legal sophistication is not, by

2   itself, an extraordinary circumstance warranting equitable tolling"); see also Turner v. Johnson,

3   177 F.3d 390, 392 (5th Cir. 1999) ( "neither a plaintiff's unfamiliarity with the legal process nor

4   his lack of representation during the applicable filing period merits equitable tolling"); Sperling

5   v. White, 30 F. Supp. 2d 1246, 1254 (C.D. Cal. 1998) (a lack of knowledge of the law is not an

6   "extraordinary circumstance" beyond the petitioner's control sufficient to entitle a petitioner to

7   equitable tolling of the limitations period).  Petitioner is not entitled to equitable tolling on this

8   basis.

9          Second, petitioner does not allege that his physical illnesses, housing assignments

10  and transfers, lack of law library access, or loss of legal documents prevented him from filing the

11  instant petition during any period of time after 2004.  While petitioner's medical and dental

12  records document a number of medical illnesses and conditions, the bulk of his records relate to

13  medical conditions he allegedly suffered from before 2004.  In this regard, petitioner himself

14  alleges that his dental problems were experienced before 2003, his hernia was operated on in

15  2002, his osteoma was in 2002, his diverticulosis flare-ups were in 2002, and his face was

16  slashed by another inmate in 2003.  Petitioner does allege that he suffers from ongoing migraine

17  headaches and serious abdominal pain, but does not specifically claim that these conditions were

18  the "but-for" causes of his tardy federal habeas filing.  Petitioner also states that his transfers and

19  loss of legal documents occurred during the first five years after sentencing, that is, from 1995 to

20  2000.  Moreover, the excessive lockdowns that petitioner complains of all occurred from 2000-

21  2003.  Thus, petitioner has not made any case in support of a contention that these conditions

22  were the "but-for" cause of his failure to file his federal habeas petition after June of 2004.[9]

23  /////

24
        [9]  As explained above, petitioner's claims that the filing of the instant habeas petition was
25  delayed because he was busy attending to his other court cases actually cut against his equitable
    tolling arguments.  Petitioner's initiation and continued prosecution of these other lawsuits
26  reflect that he was not unable to file his federal habeas petition at the time.

1    Thus, none of the circumstances cited by petitioner justify equitable tolling of the

2    AEDPA statute of limitations beyond 2004.  Because the habeas petition was not filed in this

3    court until 2007, it is time-barred.

4    IV.   Actual Innocence

5    Finally, petitioner argues that he is actually innocent of the crime of conviction

6    and that even if his federal habeas claims are time-barred, the court should therefore still consider

7    them under the doctrine announced in Sclup v. Delo, 513 U.S. 298 (1995).  In Schlup the

8    Supreme Court held that if a habeas petitioner presents new evidence of innocence so strong that

9    a court cannot have confidence in the conviction, unless the court is also satisfied that trial was

10   free of non-harmless constitutional error, the petitioner should be allowed to argue the merits of

11   his underlying claims even if they are procedurally barred.  Id. at 316.

12   Neither the United States Supreme Court nor the Ninth Circuit has squarely

13   addressed whether a habeas petitioner's demonstration of probable innocence may excuse his

14   noncompliance with the AEDPA statute of limitations.  See Majoy v. Roe, 296 F.3d 770, 776

15   (9th Cir. 2006) (declining to answer whether "surviving the rigors of this gateway [under Schlup]

16   has the consequence of overriding AEDPA's one-year statute of limitation"); Voung v. Dexter,

17   No. CV 08-3022-DOC (RNB), 2009 WL 2633758 (C.D. Cal. Aug. 26, 2009) ("Neither the

18   Supreme Court nor the Ninth Circuit has yet decided whether the habeas corpus statute of

19   limitations set forth in 28 U.S.C. § 2244(d) is subject to a 'fundamental miscarriage of justice'

20   exception.").  However, at least one district court in California has held that such a demonstration

21   may excuse a habeas petitioner's untimeliness.  See Lisker v. Knowles, 463 F. Supp.2d 1008,

22   1032 (C.D. Cal. 2006); see also Johnson v. Knowles, 541 F.3d 933, 937-38 (9th Cir. 2008) (the

23   "fundamental miscarriage of justice" exception does not excuse an untimely habeas petition

24   where the petitioner has conceded guilt).

25   Nonetheless, in this case even assuming that the AEDPA one-year statute of

26   limitations is subject to the "fundamental miscarriage of justice" exception, petitioner has not

16

met his burden of demonstrating the requisite "actual innocence."  A petitioner's claim of actual innocence must be supported "with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial."  Schlup, 513 U.S. at 324.  The petitioner "must show that, in light of all the evidence, including evidence not introduced at trial, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'"  Majoy, 296 F.3d at 776 (quoting Schlup, 513 U.S. at 327).  See also Griffin v. Johnson, 350 F.3d 956, 962-63 (9th Cir. 2003); Sistrunk v. Armenakis, 292 F.3d 669, 672-73 (9th Cir. 2002) (en banc); Gandarela v. Johnson, 286 F.3d 1080, 1086 (9th Cir. 2002.

Here, petitioner has merely submitted a letter purportedly signed by a "Regina Floodman," whom he contends was the passenger in the vehicle at the time that he was arrested for attempting to evade a peace officer.  (Pet., Ex. C-D.)  Ms. Floodman apparently did not testify at petitioner's trial in state court.  The most relevant passage of the letter submitted to the court by petitioner states,

> Yes, he was wrong and ran from the police but from what I hear is that closing arguments came down to the [illegible] passenger.  It was said that an officer observed me being slapped.  This isn't true, at the time he just wanted me to hug him.

(Id.)

Respondent argues that this letter is undated, unsworn and unauthenticated, and is therefore not reliable evidence.  (Resp't's Mot. to Dism. at 12.)  Even if the statements in Ms. Floodman's letter are true, they do not show that petitioner is actually innocent of the crime for which he was convicted.  Ms. Floodman does not state in the letter that petitioner did not try to evade the police, but merely that he did not hit her.  Petitioner therefore falls far short of making a showing that no reasonable juror would have found him guilty beyond a reasonable doubt had they been presented with this allegedly new evidence.  Accordingly, the habeas petition before this court cannot be rendered timely under a "fundamental miscarriage of justice" exception to

the AEDPA's one-year statute of limitations.

**CONCLUSION**

The pending habeas petition was filed outside of the applicable one-year statute of limitations, even with the benefit of statutory tolling.  Petitioner is not entitled to a period of equitable tolling sufficient to render his petition timely.  In addition, petitioner has not made a showing of actual innocence that would justify addressing his claims on the merits despite that untimely filing.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Respondents' motion to dismiss filed March 6, 2009 (Doc. No. 26) be granted; and

2.      This action be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 8, 2010.

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:rh
eichler0516.mtd

18